# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| MERRIN FROST, Individually and as : | CIVIL ACTION NO. |
| Proposed Administrator of the Estate of : | |
| RAYMOND FROST, Deceased. : | |
| Plaintiff, : | |
| v. : | |
| : | |
| PFIZER, INC. and PHARMACIA CORP.: | **COMPLAINT AND DEMAND FOR** |
| : | **JURY TRIAL** |
| Defendant : | |

Plaintiff Merrin Frost, by way of Complaint against the defendant herein alleges as follows:

## PARTY – PLAINTIFF

1. Raymond Frost used the pharmaceutical product known as Bextra from October 1, 2004 to October 15, 2004 and suffered injury as a result, including but not limited to a Stroke on October 15, 2004 resulting in hospitalization.

2. Plaintiff, Merrin Frost, Individually and as Proposed Administrator of the Estate of Raymond Frost, is over the age of 19 years and a citizen of Montgomery County, Ohio.

3. Raymond Frost, was injured as a result of the use of Bextra, and therefore seeks all such compensatory damages, punitive damages, all ascertainable economic losses, including, if applicable, survival damages, wrongful death damages, treble damages, attorney's fees, reimbursement of the cost of obtaining Bextra, reimbursement for all past, present and future health and medical care costs related to Bextra, per quod and derivative damages.

## DEFENDANTS

4.    Pfizer, Inc., a Delaware corporation with its address and principal place of business at 235 East 42nd Street, New York, New York 10017, and is authorized to do business and does do business in the State of New Jersey. At all times relevant hereto, Pfizer Inc. was in the business of promoting, manufacturing, marketing, and distributing Bextra.

5.    Pharmacia Corporation, is a Delaware corporation with its address and its principal place of business at 100 Route 206N, Peapack, New Jersey 07977, and is authorized to be business and does business in the State of New Jersey. At all times relevant hereto, Pharmacia Corporation was in the business of promoting, manufacturing, marketing, and distributing Bextra.

6.    At all times relevant herein, Defendants are in the business of promoting, manufacturing, marketing, and distributing pharmaceuticals and other products including Bextra.

7.    At all times relevant herein, the Defendants do business in the State of New Jersey, and upon information and belief, and at all times relevant herein manufactured and marketed Bextra.

## FACTS COMMON TO ALL COUNTS

8.    Plaintiff Decedent Raymond Frost ingested Bextra and suffered a stroke resulting in hospitalization on October 15, 2004.

9.    Defendants sold Bextra by misleading users about the product and by failing to adequately warn the public at large, including the Plaintiff, of the potential serious dangers which Defendants knew or should have known might result from consuming its product. Defendants widely and successfully marketed Bextra throughout the United States by, among other things, conducting promotional campaigns which misrepresented the efficacy of Bextra in order to induce widespread use and consumption. Bextra was represented to aid in relieving pain and discomfort

of Arthritis, Osteoarthritis and related problems. Defendants made misrepresentations by means of media advertisements and statements contained in sales literature provided to Plaintiff's prescribing physician.

10. As a result of ingesting Bextra, Plaintiff Decedent suffered a Stroke.

11. Had Plaintiff Decedent known the risks and dangers associated with Bextra or had Defendants disclosed such information to Plaintiff, he would not have taken Bextra and would not have suffered a Stroke.

12. A result of manufacturing and marketing Bextra, Defendants reaped huge profits, while concealing from the public, including the Plaintiff, knowledge of the potential hazard associated with the ingestion of Bextra.

13. Defendants failed to perform adequate testing that would have shown Bextra caused serious side effects. Defendants also failed to provide warnings that would accurately reflect the serious side effects caused by Bextra.

14. Prior to the manufacturing, sale and distribution of Bextra, Defendants had notice and knowledge from several sources that Bextra presented substantial and unreasonable risks of harm to consumers.

15. Despite knowledge of the serious risks Bextra posed to consumers, Defendants intentionally proceeded with the manufacturing, sale and marketing of Bextra. Defendants' conduct was therefore wanton and willful, and displayed a conscious disregard for the safety of Plaintiff, in particular, and the public in general, entitling him to exemplary damages.

16. Defendants acted with conscious and wanton disregard of the health and safety of Plaintiff Decedent, in particular, and the public in general. Therefore, Plaintiff is entitled to an award of additional damages for the sake of example and for the purpose of punishing Defendants for their

conduct, in an amount sufficiently large to be an example to others and to deter Defendants and others from engaging in similar conduct in the future. The above-described wrongful conduct was done with knowledge, authorization and ratification of the officers, directors, managing agents and/or employees of Defendants.

17. As a result of ingesting Bextra, Plaintiff Decedent suffered a Heart attack.

## COUNT I
## NEGLIGENCE

18. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth and further alleges as follows:

19. Defendants had a duty to exercise reasonable care to properly design, research, develop, test, manufacture, inspect, label, prepare for use, distribute, market and sell Bextra, including a duty to insure that the product not cause users to suffer from unreasonably dangerous or untoward adverse side effects.

20. Defendants failed to exercise ordinary care in the design, research, development, testing, manufacture, inspection, quality assurance, quality control, labeling, distribution, marketing and/or sale of Bextra into interstate commerce, in that Defendants knew or reasonably should have known that the product created a high risk of unreasonably dangerous or untoward adverse side effects.

21. Defendants knew, or in the exercise of reasonable care should have known, that the aforesaid product was of such a nature that if not properly manufactured, labeled, tested, and inspected before sold, it would cause foreseeable injury to the product's user.

22. Defendants were negligent in the design, manufacture, testing, promotion, advertising, warning, labeling, marketing and sale of Bextra in that they:

(a)   failed to use due care in the designing, testing, and manufacturing of Bextra so as to prevent the aforementioned risks to individuals when Bextra was used for treatment;

(b)   failed to accompany the product with proper warnings regarding all possible adverse side effects associated with the use of Bextra and the frequency, comparative severity and duration of such adverse effects;

(c)   failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Bextra;

(d)   failed to provide adequate training and information to medical care providers for the appropriate use of Bextra;

(e)   failed to warn the Plaintiff, prior to actively encouraging and promoting the sale of Bextra, either directly or indirectly, orally or in writing, about the adverse side effects associated with the use of this product, including but not limited to heart attack, stroke and death; and

(f)   were otherwise careless and/or negligent.

23.   Despite the fact that Defendants knew or should have known that Bextra caused unreasonable and dangerous side effects, which many users would be unable to remedy by any means, Defendants continued to market Bextra when safer alternative methods of treatment were available.

24.   Defendants knew or should have known that consumers such as Plaintiff Decedent would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

25. As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff Decedent suffered profound injuries; required medical treatment and hospitalization; became liable for medical and hospital expenses; lost financial gains; was kept from ordinary activities and duties; was made to experience mental and physical pain and suffering, disability and loss of enjoyment of life.

**WHEREFORE** Plaintiff demands judgment against defendant for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT II

## PRODUCTS LIABILITY – DEFECTIVE DESIGN (N.J.S.A. 2A:58C-2*et seq.*)

26. Plaintiff repeats and incorporates by reference all other paragraphs of the Complaint as if fully set forth herein.

27. Defendants are the researchers, developers, manufacturers, distributors, marketers, promoters, suppliers and sellers of Bextra, which is defective and unreasonably dangerous to consumers.

28. Alternatively, Bextra manufactured and/or supplied by Defendants was defective in design or formulation, such that when it was placed in the stream of commerce, it was unreasonably dangerous in that it was more dangerous than an ordinary consumer would expect and more dangerous than other anti-inflammatory drugs for Osteoarthritis which were available to Plaintiff Decedent.

29. Bextra manufactured by Defendants was defective due to inadequate warnings or instructions since the manufacturers knew or should have known that the product created a risk of

harm to consumers such as Plaintiff Decedent when used in the way it was intended to be used and in a manner which was reasonable foreseeable by Defendants.

30. Bextra manufactured and supplied by Defendants was defective due to inadequate warnings, inadequate testing, and inadequate post-marketing warnings, inadequate post-marketing instructions, because after Defendants knew or should have known of the risk of injury from Bextra, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

31. Bextra was at the time it left Defendants' control, a defective product, unreasonably dangerous for use, resulting in injury to Plaintiff Decedent as herein alleged.

32. The defective and unreasonably dangerous condition of Bextra was the proximate cause of the damages and injuries sustained by Plaintiff Decedent.

33. As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, or some or any one of them, Plaintiff Decedent suffered profound injuries which were permanent in nature; required medical treatment and hospitalization; had become liable for medical and hospital expenses; lost financial gains; had been kept from ordinary activities and duties and had experienced mental and physical pain and suffering, disability and loss of enjoyment of life.

**WHEREFORE,** Plaintiff demands judgment against Defendants, Pfizer and Pharmacia, for compensatory, treble and punitive damages, together with interest, costs of suit, attorney's fees and all such other relief as the Court deems proper.

**COUNT III**
**PRODUCTS LIABILITY – FAILURE TO WARN (N.J.S.A. 2A:58C-2 _et seq._)**

34. Plaintiff incorporates by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

35.    Defendants knew or should have known of the serious adverse effects of Bextra when used for its intended purpose.

36.    Bextra manufactured and/or supplied by Defendants, was at all relevant times herein, unaccompanied by proper warnings concerning all possible adverse side effects including, but not limited to, the comparative severity, scope and duration of adverse effects.

37.    Defendants also failed to effectively warn that Bextra increased the risk of heart attacks, or strokes and therefore, constitutes a product unreasonably dangerous for normal use due to its defective design, defective manufacture, and Defendants' misrepresentations and inadequate fact disclosures to the Plaintiff Decedent and Plaintiff Decedent's physicians.

38.    That the Bextra manufactured and/or supplied by Defendants was unreasonably dangerous and defective because Bextra was not accompanied by proper warnings to physicians and the medical community regarding all possible adverse side effects associated with the use of Bextra and the comparative severity, incidence and duration of such adverse effects.

39.    That the warnings and information given to the medical community did not accurately reflect the symptoms, scope, severity, or frequency of the potential side effects.

40.    That after Defendants knew or should have known of the risk of injury from Bextra, they failed to provide adequate warnings to users or consumers of the product, and in fact continued to aggressively promote the product, and as a direct result thereof, Bextra manufactured and/or supplied by Defendants was defective due to inadequate post-marketing warning and/or instructions.

41.    That as a proximate cause and legal result of the defective condition of Bextra, as manufactured and/or supplied by Defendants, and as a direct and legal result of the negligence, carelessness, other wrongdoing and actions of Defendants, Plaintiff Decedent sustained the damages and injuries set forth above.

42.    That had Plaintiff Decedent been adequately warned by any of the Defendants of the dangers of Bextra she would not have taken Bextra and would not have been damaged thereby.

43.    That at all relevant times herein, Defendants knew of the defective nature of their product, and continued to design, manufacture, market, label, and sell Bextra, so as to maximize sales and profits at the expense of public health and safety, and as such, Defendants' conduct exhibits such an entire lack of care as to establish that their actions were a result of fraud, actual malice, and the conscious and deliberate disregard of foreseeable harm to Plaintiff Decedent, thereby entitling Plaintiff to punitive damages.

44.    As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, or some or any one of them, Plaintiff Decedent suffered profound injuries which were permanent; required medical treatment and hospitalization; had become liable for medical and hospital expenses; lost financial gains; had been kept from ordinary activities and duties and had experienced mental and physical pain and suffering, disability and loss of enjoyment of life.

**WHEREFORE,** Plaintiff demands judgment against Defendants, Pfizer and Pharmacia, for compensatory, treble and punitive damages, together with interest, costs of suit, attorney's fees and all such other relief as the Court deems proper.

## COUNT IV
## NEW JERSEY CONSUMER FRAUD ACT (N.J.S.A. 56:8-2 *et seq.*)

45.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

46.    Prescription drugs such as Bextra are "merchandise," as that term is defined by N.J.S.A. 56:8-1 et seq.

47.    Defendants, Pfizer and Pharmacia, are the researchers, developers, designers, testers, manufacturers, inspectors, labelers, distributors, marketers, promoters, and sellers and/or otherwise released Bextra into the stream of commerce.

48.    Defendants, Pfizer and Pharmacia, knew or should have known that the use of Bextra causes serious and life threatening injuries but failed to warn the public, including Plaintiff Decedent, of the same.

49.    In violation of the Act, Defendants Pfizer and Pharmacia, made untrue, deceptive or misleading representations of material facts to and omitted and/or concealed material facts from Plaintiff Decedent in product packaging, labeling, medical advertising, direct-to-consumer advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Bextra. Moreover, Defendants downplayed and/or understated the serious nature of the risks associated with Bextra in other to increase the sales of Bextra and secure a greater share of the COX-2 market.

50.    Defendants' statements and omissions were undertaken with the intent that the FDA, physicians, and consumers, including the Plaintiff Decedent, would rely on the Defendants' statements and/or omissions.

51.    Defendants knew of the growing public acceptance of the misinformation and misrepresentation regarding the safety and efficacy of Bextra but remained silent because Pfizer's and Pharmacia's appetites for significant future profits far outweighed its concern for the health and safety of the Plaintiff Decedent.

52.    Plaintiff Decedent's physician prescribed and/or otherwise provided Plaintiff Decedent with Bextra, and Plaintiff Decedent consumed Bextra, primarily for personal and family reasons and suffered ascertainable losses of money as a result of the Defendants' use or employment of the

methods, acts, or practices alleged herein.

53.   The aforesaid promotion and release of Bextra into the stream of commerce constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others would rely upon such concealment, suppression of omission in connection with the sale or advertisement of such merchandise or services by Defendants, in violation of the New Jersey Consumer Fraud Act., N.J.S.A. 56:8-1 *et seq.*

54.   Defendants Pfizer and Pharmacia, concealed, omitted, or minimized the side effects of Bextra or provided misinformation about adverse reactions, risks and potential harms from Bextra and succeeded in persuading consumers to purchase and ingest Bextra despite the lack of safety and the risk of adverse medical reactions, including cardiovascular events and gastrointestinal effects.

55.   Defendants Pfizer and Pharmacia's, practice of promoting and marketing Bextra created and reinforced a false impression as to the safety of Bextra, thereby placing consumers at risk of serious and potential lethal effects.

56.   Bextra lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

57.   Defendants Pfizer and Pharmacia violated their post-manufacture duty to warn which arose when Pfizer and Pharmacia knew, or with reasonable care should have known, that Bextra was injurious and sometimes fatal.

58.   At the time when consumers purchased and ingested Bextra, Defendants Pfizer and Pharmacia intended that others would rely upon the concealment, suppression or omission of the risks of ingesting Bextra.

59. Defendants' actions in connection with manufacturing, distributing, and marketing of Bextra as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the New Jersey Consumer Fraud Act., N.J.S.A, 56:8-2 *et seq.*

60. Defendants Pfizer and Pharmacia acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when committing these acts of consumer fraud.

61. As a proximate result of the acts of consumer fraud set forth above, Plaintiff Decedent had purchased an unsafe product and incurred monetary expense and the risk to herself and members of her household that would have consume Bextra and thereby suffer an increased risk of harm as previously set forth herein.

**WHEREFORE**, Plaintiff demands judgment against Defendants Pfizer and Pharmacia for compensatory, treble and punitive damages, together with interest, costs of suit, attorney's fees and all such other relief as the Court deems proper.

## COUNT V
## BREACH OF EXPRESS WARRANTY

62. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

63. Defendants Pfizer and Pharmacia placed Bextra into the stream of commerce for sale and recommended its use to physicians, the FDA and consumers without adequately warning physicians, the FDA and consumers, including the Plaintiff Decedent, of the risks associated with the use of Bextra.

64.     Defendants Pfizer and Pharmacia had a duty to exercise reasonable care in the research, development, design, testing, manufacture, inspection, labeling, distribution, marketing, promotion sale and release of Bextra, including a duty to:

    a.     Ensure that the product did not cause the users unreasonably dangerous side effects;

    b.   Warn of dangerous and potentially fatal side effects; and

    c.     Disclose adverse material facts when making representations to physicians, the FDA and the public at large, including Plaintiff Decedent.

65.     When Plaintiff Decedent's physicians prescribed Bextra and Plaintiff Decedent made the decision to use Bextra, both Plaintiff Decedent and his physician reasonably relied upon the Defendants and their agents to disclose known defects, risks, dangers and side effects of Bextra.

66.     Plaintiff Decedent's physicians, the FDA and/or Plaintiff had no knowledge of the falsity or incompleteness of the Defendants' statements and representations concerning Bextra when Plaintiff Decedent's physician prescribed and/or otherwise provided Bextra and Plaintiff Decedent purchased and used Bextra as researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by the Defendants. Plaintiff Decedent justifiably and detrimentally relied on the warranties and representations of Defendants in the purchase and use of Bextra.

67.     Defendants Pfizer and Pharmacia were under a duty to disclose the defective and unsafe nature of Bextra to physicians, the FDA, consumers and users, such as Plaintiff Decedent. Defendants had sole access to material facts concerning the defects, and Defendants knew that physicians, the FDA and users, such as Plaintiff Decedent, could not have reasonably discovered such defects.

68. By the conduct alleged, Defendants Pfizer and Pharmacia, their agents and employees expressly warranted to Plaintiff Decedent and Plaintiff Decedent's physicians that the products were merchantable and fit for the purpose intended, in violation of N.J.S.A. 12A:2-313 et sq.

69. This warranty was breached because Bextra was not safe and effective as a medication for arthritis and pain, as Defendants had represented, and Plaintiff Decedent was injured.

70. As a direct result of Defendants' conduct as aforesaid, Plaintiff Decedent has suffered and continues to suffer serious and permanent physical and emotional injuries, have expended and will continue to expend large sums of money for medical care and treatment, have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured.

WHEREFORE, Plaintiff demands judgment against Defendants Pfizer and Pharmacia for compensatory, treble and punitive damages, together with interest, costs of suit, attorney's fees and all such other relief as the Court deems proper.

## COUNT VI
## PUNITIVE DAMAGES UNDER THE PRODUCTS LIABILITY ACT (N.J.S.A.2A:58C1)

71. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

72. The Plaintiff is entitled to punitive damages because the Defendants' failure to warn was reckless and without regard for the public's safety and welfare. The Defendants misled both the medical community and the public at large, including the Plaintiff Decedent herein, by making false representations about the safety of Bextra. Defendants downplayed, understated and/or disregarded its knowledge of the serious and permanent side effects and risks associated with the use of Bextra

despite available information demonstrating that Bextra was likely to cause serious and fatal side effects to users.

73.    Defendants were or should have been in possession of evidence demonstrating that Bextra caused serious side effects. Nevertheless, Defendants continued to market Bextra by providing false and misleading information with regard to safety and efficacy.

74.    Defendants failed to provide warnings that would have dissuaded physicians from prescribing Bextra and consumers from purchasing and consuming Bextra, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and/or purchasing and consuming Bextra.

**WHEREFORE**, Plaintiff demands judgment against Defendants Pfizer and Pharmacia for compensatory, treble and punitive damages, together with interest, costs of suit, attorney's fees and all such other relief as the Court deems proper.

## COUNT VII
## STRICT LIABILTIY IN TORT

75.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth and further alleges as follows:

76.    Defendants are the manufacturers and/or suppliers and/or marketers of Bextra and are strictly liable to Plaintiff for designing, creating, manufacturing, distributing, selling and placing into the stream of commerce the drug Bextra.

77.    Bextra manufactured and/or supplied and/or marketed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than other forms of treatment for osteoarthritis and rheumatoid arthritis.

78.     Bextra manufactured and/or supplied and/or marketed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or supplier, the foreseeable risks exceeded the benefits associated with the design or formulation.

79.     Bextra manufactured and/or supplied and/or marketed by Defendants was defective due to inadequate warnings or instructions because the manufacturer knew or should have known that the product created, among other things, a risk of heart attack, stroke and death to consumers, and failed to adequately warn of said risks.

80.     Bextra manufactured and/or supplied and/or marketed by Defendants was defective due to inadequate pre-marketing testing.

81.     Bextra manufactured and/or supplied and/or marketed by Defendants was defective due to Defendants' failure to provide adequate initial warnings and post-marketing warnings or instructions after Defendants knew or should have known of the risks of heart attack, stroke and death from Bextra, and continued to promote the product.

82.     As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff Decedent suffered profound injuries; required medical treatment and hospitalization; became liable for medical and hospital expenses; lost financial gains; was kept from ordinary activities and duties; was made to experience mental and physical pain and suffering, disability and loss of enjoyment of life.

**WHEREFORE** Plaintiff demands judgment against Defendants for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT VIII
### PRODUCT LIABILTY ACT (N.J.S.A. 2A:58C-1 et seq.)

83.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth and further alleges as follows:

84.     Defendants are the researchers, developers, manufacturers, distributors, marketers, promoters, suppliers and sellers of Bextra, which is defective and unreasonably dangerous to consumers.

85.     Bextra manufactured and/or supplied by Defendants was defective in design or formulation, in that when it was placed in the stream of commerce, it was unreasonably dangerous because it was more dangerous than an ordinary consumer would expect and more dangerous than other anti-inflammatory drugs used for treatment of rheumatoid arthritis or osteoarthritis and which were available to Plaintiff Decedent.

86.     Bextra manufactured and/or supplied by Defendants was defective due to inadequate warnings or instructions, in that its manufacturer knew or should have known that the product created a risk of harm to consumers such as Plaintiff Decedent when used as intended and in a manner which was reasonably foreseeable by Defendants.

87.     Bextra manufactured and/or supplied by Defendants was defective due to inadequate warnings, inadequate testing, inadequate post-marketing surveillance, inadequate post-marketing warnings, and inadequate post-marketing instructions because after Defendants knew or should have known of the risk of injury from Bextra, it failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

88.     At the time it left defendant's control, Bextra was a defective product, unreasonably dangerous for use, resulting in injury to Plaintiff Decedent as herein alleged.

89.     Bextra manufactured and/or supplied by Defendants was at all times relevant hereto unaccompanied by proper warnings concerning all possible adverse side effects including, but not limited to, the comparative severity, incidence, scope and duration of adverse effects.

90.     Defendants failed to effectively warn that Bextra increased the risk of heart attack, stroke and death, and the product was therefore unreasonably dangerous for its normal and intended use due to its defective design, defective manufacture, and Defendants' misrepresentations and inadequate disclosures to Plaintiff Decedent and Plaintiff Decedent's physicians.

91.     Bextra manufactured and/or supplied by Defendant was unreasonably dangerous and defective because it was not accompanied by proper warnings to prescribing physicians and the medical community regarding all possible adverse side effects associated with the use of Bextra and the comparative severity, incidence, scope and duration of such adverse effects.

92.     Such warnings and information that Defendant did provide to the medical community did not accurately reflect the symptoms, scope, severity, or frequency of the potential side effects.

93.     Defendants failed to provide warnings that would have dissuaded physicians from prescribing Bextra and consumers from purchasing and consuming Bextra, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and/or purchasing and consuming Bextra.

94.     At all times relevant hereto, Defendants knew of the defective nature of its Bextra product, and continued to design, manufacture, market, label, and sell Bextra so as to maximize sales and profits at the expense of public health and safety, with wanton and willful disregard of the safety of product users, consumers, or others who foreseeably might be harmed by the product, including Plaintiff Decedent, thereby entitling Plaintiff Decedent to punitive damages.

95.     Defendants misled regulators, the medical community and the public at large, including the Plaintiff Decedent, by making false and misleading representations about the safety of Bextra. Defendants downplayed, understated and/or disregarded its knowledge of the serious and permanent side effects and risks associated with the use of Bextra despite the available information demonstrating that Bextra was likely to cause serious and fatal side effects to users, and knowingly withheld or misrepresented information required to be submitted to the FDA under the agency's regulations, which information was material and relevant to the harm suffered by Plaintiff.

96.     As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff's Decedent suffered profound injuries; required medical treatment and hospitalization; became liable for medical and hospital expenses; lost financial gains; was kept from ordinary activities and duties; was made to experience mental and physical pain and suffering, disability and loss of enjoyment of life.

**WHEREFORE** Plaintiff demands judgment against Defendants for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT IX
## BREACH OF IMPLIED WARRANTY

97.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth and further alleges as follows:

98.     Defendants marketed, manufactured, promoted, distributed and/or sold Bextra for use by the public at large and including the Plaintiff herein. Defendants knew the use for which their product was intended and impliedly warranted said product to be of merchantable quality, safe and fit for use.

99.    Plaintiff reasonably relied on the skill and judgment of the Defendants, and as such their implied warranty, in using the aforementioned product. Contrary to same, said product was not of merchantable quality or safe or fit for its intended use, because said product is unreasonably dangerous and unfit for the ordinary purpose for which it was used.

100.    As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiff suffered profound injuries; required medical treatment and hospitalization; became liable for medical and hospital expenses; lost financial gains; was kept from ordinary activities and duties; was made to experience mental and physical pain and suffering, disability and loss of enjoyment of life.

**WHEREFORE** Plaintiff demands judgment against defendant for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT X
## NEGLIGENT MISREPRESENTATION

101.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth and further alleges as follows:

102.    Defendants, having undertaken the manufacturing, marketing, prescription, dispensing, distribution and/or promotion of Bextra described herein, owed a duty to provide accurate and complete information regarding its product.

103.    Defendants falsely represented that the aforesaid product was safe and effective for the treatment of osteoarthritis and rheumatoid arthritis. The representations by Defendants were in fact false and in fact the product was not safe for said purpose and in fact was dangerous to the health of Plaintiff.

104.    At the time the aforesaid representations were made, Defendants concealed from Plaintiff and health care providers information about the propensity of the product to cause great harm. Defendants negligently misrepresented claims regarding the safety and efficacy of said product despite the lack of information regarding same.

105.    The aforesaid misrepresentations were made by Defendants with the intent to induce Plaintiff to use the product, to his detriment.

106.    At the time of Defendants' misrepresentations and omissions, Plaintiff was ignorant of the falsity of these statements and reasonably believed them to be true.

107.    Defendants breached their duties to Plaintiff by providing false, incomplete and/or misleading information regarding their product.   Plaintiff reasonably believed Defendants' representations and reasonably relied on the accuracy of those representations when agreeing to treatment with Bextra.

108.    As a direct and proximate result of one or more of these wrongful acts or omissions of Defendants, Plaintiff suffered profound injuries; required medical treatment and hospitalization; became liable for medical and hospital expenses; lost financial gains; was kept from ordinary activities and duties; was made to experience mental and physical pain and suffering, disability and loss of enjoyment of life.

**WHEREFORE** Plaintiff demands judgment against Defendants for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT XI
## FRAUDULENT MISREPRESENTATION

109. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth and further alleges as follows:

110. Defendants, having undertaken the manufacturing, marketing, prescription, dispensing, distribution and promotion of Bextra described herein, owed a duty to provide accurate and complete information regarding its product.

111. Defendants fraudulently misrepresented information regarding their product including, but not limited to, its propensity to cause serious physical harm.

112. At the time of Defendants' fraudulent misrepresentations and omissions, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

113. Defendants breached their duties to Plaintiff by providing false, incomplete and misleading information regarding their product.

114. Defendants acted with deliberate intent to deceive and mislead Plaintiff.

115. Plaintiff reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

116. As a direct and proximate result of one or more of these wrongful acts or omissions of Defendants, Plaintiff suffered profound injuries; required medical treatment and hospitalization; became liable for medical and hospital expenses; lost financial gains; was kept from ordinary activities and duties; was made to experience mental and physical pain and suffering, disability and loss of enjoyment of life.

**WHEREFORE** Plaintiff demands judgment against Defendants for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT VI

## LOSS OF CONSORTIUM

117.   Plaintiffs incorporate by reference all other paragraphs of this complaint as if fully set forth and further alleges as follows:

118.   As a direct and proximate result of one or more of the wrongful acts or omissions of defendant as described herein, plaintiff was deprived of the care, comfort, companionship and consortium of his spouse.

**WHEREFORE** Plaintiffs demand judgment against defendant for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff demands judgment against Defendants Pfizer and Pharmacia as follows:

A. Awarding Plaintiff compensatory damages against Defendants in an amount sufficient to fairly and completely compensate Plaintiff for all damages;

B. Awarding Plaintiff treble damages against Defendants so to fairly and completely compensate Plaintiff for all damages, and to deter similar wrongful conduct in the future;

C. Awarding Plaintiff punitive damages against Defendants in an amount sufficient to punish Defendants for its wrongful conduct and to deter similar wrongful conduct in the future;

D. Awarding Plaintiff costs and disbursements, costs of investigations, attorney's fees and all such other relief available under New Jersey law;

E.  Awarding that the costs of this action be taxed to Defendants; and

F.  Awarding such other and further relief as the Court may deem just and proper

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

Dated: April 9, 2007

**WEITZ & LUXENBERG**
*A New York Professional Corporation*
Attorneys for Plaintiff

Franklin P. Solomon
Jerry Kristal
Renee L. Henderson (RH-04237)
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Tel #: (856)755-1115
Fax #: (856)755-1995